PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| EMPIRE TITLE SERVICES, INC., | ) | |
| | ) | CASE NO. 1:10cv2208 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| FIFTH THIRD MORTGAGE COMPANY, | ) | |
| *et al.*, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendants. | ) | **ORDER** [Regarding ECF No. 13] |

(1:10cv2208)

# TABLE OF CONTENTS

I. Background ........................................................................................................ 3
    A.  The Parties .................................................................................................. 3
    B.  The Alleged Scheme ................................................................................... 4
    C.  The Claims .................................................................................................. 5
II.  Legal Standard ................................................................................................. 5
III.  Discussion ....................................................................................................... 6
    A.  RESPA Violations ....................................................................................... 7
    B.  Association-in-Fact Enterprise .................................................................. 12
    C.  Proximate Cause ....................................................................................... 15
        1. Applying the Principles in *Holmes* ..................................................... 15
            a.  The Amount of Damages Attributable to the Injury ...................... 16
                i.  Whether Empire Sufficiently Alleges Injury ....................... 17
                ii.  Whether Empire's Injury is Direct ..................................... 20
                iii.  Whether the Causal Chain is Broken ................................. 21
            b.  The Difficulty of Apportioning Damages ........................................ 23
            c.  The Deterrence of Injurious Conduct ............................................. 25
        2.  Whether the RICO Violation Directly Caused the Injury .......................... 26
            a.  Counts I and II: 18 U.S.C. § 1962(a) ........................................... 26
            b.  Counts III and IV:  18 U.S.C. § 1962(c) ..........................................28
                i.  Mail and Wire Fraud ..............................................................29
                ii.  Interstate Transport of Money ............................................. 31
            c.  Counts V and VI:  18 U.S.C. § 1962(d) ......................................... 31
    D.  Particularity Requirement ......................................................................... 32
IV.  Conclusion ..................................................................................................... 37

2

(1:10cv2208)

This matter is before the Court upon the Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants Fifth Third Mortgage Company, Fifth Third Financial Corporation, Fifth Third Bank, and Vista Settlement Services, LLC (collectively "Fifth Third").  ECF No. 13.  The Court has been advised, having reviewed the record, the parties' briefs and the applicable law.  For the reasons that follow, the Court grants Fifth Third's motion to dismiss.

## I.  Background

### A.  The Parties

Plaintiff Empire Title Services, Inc. ("Empire") conducts closings of mortgage loans and issues title insurance in those mortgage loan transactions.  ECF No. 1 at 15, ¶49.  Empire closed mortgages transactions funded by Defendant Fifth Third Bank ("FTB").  ECF No. 1 at 6, ¶6.

Defendant Fifth Third Mortgage ("FTM") is a lender that provides home and other loans to borrowers in various states, including Ohio.  ECF No. 13 at 11.  FTB is FTM's sister company and employs mortgage-loan officers who work for FTM.  ECF No. 13 at 11.  Defendant Fifth Third Financial ("FTF") is the parent company of FTM and FTB. ECF No. 13 at 11.

The settlement services necessary to close a mortgage loan generally include tasks such as escrowing funds; preparing loan documents; performing title searches; issuing title-insurance commitments, policies, and endorsements; and closing loans.  ECF No. 13 at 11.  In many states, third-party settlement agents who are also licensed title agents offer to provide all of the services necessary to close a mortgage loan, including issuing title policies, title commitments, and policy endorsements.  ECF No. 13 at 11.

3

(1:10cv2208)

In 2006, FTF created Vista Settlement Services, LLC ("Vista") to perform settlement services for lenders, including FTM.  ECF No. 13 at 11.  Vista is licensed to act as a title-insurance agent and to perform other mortgage-loan settlement services in Ohio and other states.  ECF No. 13 at 11.  As a licensed title-insurance agent, Vista can issue title commitments, title policies, and policy endorsements on behalf of several title-insurance carriers.  ECF No. 13 at 11.  Empire, a licensed title agent, and is a competitor of Vista.  ECF No. 13 at 11.

**B.  The Alleged Scheme**

Empire alleges that Fifth Third created Vista solely to capture "the most lucrative" settlement services—issuing title insurance commitments, policies, and endorsements.  ECF No. 1 at 3, ¶5.  To guarantee that Vista captured this business, Empire alleges Fifth Third engaged in an illegal referral scheme in violation of the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §§ 2601 *et seq*. ("RESPA"), whereby FTM's loan officers referred settlement work only to certain cooperating settlement agents who agreed in advance to refer all title insurance premium generating business to Vista.  ECF No. 1 at 3,  4, ¶¶6, 7.  If an agent refused to refer the title business to Vista, Empire alleges that FTM "blacklisted" the agent and directed settlement work to cooperating settlement agents.  ECF No. 1 at 3, 4, ¶¶6, 7.  In return for referring business to cooperating agents, Empire alleges FTM's loan officers are paid 10% or more of Vista's revenue generated by the issuance of title commitments, title insurance policies and any Fifth Third required title insurance endorsements.  ECF No. 1 at 4, ¶7.

Empire alleges that, because it refused to participate in the alleged scheme, it suffered substantial damages, including, but not limited to, the loss of income from transactions it would

4

(1:10cv2208)

earned closing mortgage loans for Fifth Third Mortgage.  ECF No. 1 at 5-6, ¶¶12, 14.

### C.  The Claims

Empire brings this putative class action alleging violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq*. ("RICO").  The Complaint lists six counts.[1]  Counts I and II allege Fifth Third procured and retained illegally gained funds and reinvested and used those funds in their operations in violation of 18 U.S.C. § 1962(a).  ECF No. 1 at 27, ¶97; at 33, ¶121.  Counts III and IV allege multiple acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341, 1343, and multiple instances of interstate transport of money converted or fraudulently obtained in violation of 18 U.S.C. § 2314, in further violation of 18 U.S.C. § 1962(c).  ECF No. 1 at 34, ¶¶127, 128; at 35, ¶¶133, 134.  Counts V and VI allege Fifth Third conspired within the meaning of 18 U.S.C. § 1962(d) to violate § 1962(a).  ECF No. 1 at 37-38, ¶¶139, 146.

## II.  Legal Standard

In deciding a motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6), the Court must take all well-pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "While legal

---

[1]  The Complaint asserts three RICO violations as against both co-conspirator Defendants and association-in-fact Defendants, for a total of six counts.

5

(1:10cv2208)

conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.  The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing authorities).

In other words, claims set forth in a complaint must be plausible, rather than conceivable. *Twombly*, 550 U.S. at 570.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. Pro. 8(a)(2)).

### III.  Discussion

To properly lodge a civil RICO claim, a plaintiff must establish four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir.2006) (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)).  A plaintiff can only recover to the extent that it has been injured in business or property proximately caused by the conduct constituting the violation. *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 612 (6th Cir. 2004) (citing *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992); *Sedima*, 473 U.S. at 496)).

Fifth Third argues that the allegations in the Complaint amount to no more than non-actionable RESPA violations transformed into alleged RICO violations; Empire does not allege a viable association-in-fact enterprise; Empire does not offer allegations that would show how the alleged RICO violations proximately caused Empire's alleged injury, and; the Complaint does

6

(1:10cv2208)

not sufficiently allege the predicate offenses of mail and wire fraud as required by Fed. R. Civ. Pro. 9(b).

**A.  RESPA Violations**

Fifth Third argues that Empire, which cannot recover under RESPA, is improperly transforming allegations of RESPA violations into actionable RICO violations, amounting to an "end-run" of RESPA's remedial scheme which provides only consumers (*i.e.* borrowers) with a private right of action.[2]  ECF No. 13 at 14.  If unchecked, Empire contends, there is nothing to prevent Fifth Third's alleged scheme from running afoul of both RESPA and RICO.  ECF No. 17 at 17.

The parties agree that RESPA is a consumer protection statute that governs the provision of settlement procedures in real estate transactions.  12 U.S.C. § 2601(a), (b).  Congress designated enforcement in two ways: (1) by imposing criminal penalties for conduct that violates its provisions, and (2) by granting the government and borrowers a right of action to enforce certain provisions through civil suits.  § 2607(d)(1)-(5).[3]

In support of its argument that Empire's RICO claims are not actionable because they are based on RESPA violations, and RESPA violations are not a recognized RICO predicate, Fifth Third relies on *Ayres v. General Motors Corp.*, 234 F.3d 5141 (11th Cir. 2000) and *Brown v. First Tennessee Bank Nat. Ass'n.*, 753 F.Supp.2d 1249 (N.D.Ga. 2009).  In *Ayres*, purchasers of

---

[2]  RESPA violations are not among the predicate offences defined as racketeering activity in the RICO statute.  *See* 18 U.S.C. § 1961(1)(B).

[3]  RESPA, like RICO, provides for treble damages.  *See* 12 U.S.C. § 2607(d)(2); 18 U.S.C. § 1964(c).

(1:10cv2208)

used cars brought RICO claims against the car manufacturer alleging the manufacturer violated mail and wire fraud statutes by not disclosing defects, as required by the Nation Traffic and Motor Vehicle Safety Act.  *Id*. at 516-17.  The court found that the Safety Act did not provide a private right of action, instead containing only administrative remedies.  *Id*. at 523.  As such, the court determined that "Congress did not intend for a violation of the Safety Act to be the basis for a private civil RICO action."  *Id*. at 524.  Because the plaintiffs' wire and mail fraud allegations were solely based upon alleged Safety Act violations, the court dismissed the plaintiffs' claim.  *Id*. at 525.  *See also Gifford v. Meda*, 2010 WL 1875096, at *14-15 (E.D.Mich. May 10, 2010) (finding that the presence of an exclusive administrative remedial scheme in the Social Security Act and the Internal Revenue Code foreclosed the plaintiffs' RICO claim, citing the analogous cases *Ayres*, 234 F.3d at 522; *Danielsen v. Burnside–Ott Aviation Training Center, Inc.*, 941 F.2d 1220, 1227 (D.C.Cir. 1991) (Service Contract Act); *McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1221 (11th Cir. 2002) (Higher Education Act); *Norman v. Niagara Mohawk Power Corp.*, 873 F.2d 634, 637 (2d Cir. 1989) (Energy Reorganization Act);  *Bodimetrics Health Servs., Inc. v. Aetna Life & Casualty*, 903 F.2d 480, 486–487 (7th Cir.1990) (Social Security Act); and *Bridges v. Blue Cross and Blue Shield Assoc.*, 935 F.Supp. 37, 41–43 (D.D.C. 1996) (Federal Employee Health Benefits Act).  *See also Brown*, 753 F.Supp.2d at 1254 (Department of Veterans Affairs guidelines pertaining to bank loans).

Empire relies on *Johnson v. KB Home*, 720 F. Supp. 2d 1109 (D. Ariz. 2010) in support

8

(1:10cv2208)

of its argument that a plaintiff can bring claims under both RESPA and RICO.[4]  In *Johnson*, the court rejected the argument that the borrower plaintiffs' RICO claims were barred because they were reformulated RESPA claims.  *Id*. at 1116.  The court found that "[w]hile RESPA violations do not constitute racketeering activity, 18 U.S.C. § 1961(1), a person can engage in mail fraud based on fraudulent appraisals without the operation of RESPA."  *Id*.  The court also noted that defendant "fail[ed] to point to any RESPA provision that creates exclusive jurisdiction of remedies."  *Id*.  *See also Galas v. Lending Co., Inc*., 2013 WL 308745, at *4 (D.Ariz. Jan 25, 2013) (same).  Fifth Third retorts that the *Johnson* plaintiffs were borrowers, authorized to bring a private suit under RESPA.  ECF No. 18 at 16.

The parties do not cite case law from the Sixth Circuit, and, independently, the Court has

---

[4] Empire also relies on other case law, but those cases do not address the issue presented to the instant Court and discussed in *Johnson*, *Ayres* and *Brown*.  For example, Empire cites *Minter v. Wells Fargo Bank, N.A.*, 593 F. Supp. 2d 788 (D. Md. 2009) as upholding claims for a violation of RESPA as well as RICO.  ECF No. 17 at 20.  However, *Minter* did not address the issue of whether the RICO claims were proper, instead found that neither RESPA nor RICO allow for a private right of injunctive relief.  *Id*. at 796.  Furthermore, while it is fair to say that in *Yates v. All American Abstract Co.*, 487 F. Supp. 2d 579 (E.D. Pa. 2007), Empire's other cited case, the court "allow[ed] both RICO and RESPA claims to proceed," the *Yates* court did not address the specific question presented here.  ECF No. 17 at 20.  *Robinson*, *infra*, suffers from the same infirmary.

Empire also relies upon *United States v. Philip Morris*, 263 F.Supp.2d 72 (D.D.C. 2003), which is distinguishable.  *Philip Morris*, a criminal case, regards the government's prosecution under the RICO statute, despite existence of regulations of the same conduct by the Federal Trade Commission Act and the Federal Cigarette Labeling and Advertising Act.  *Id*. at 78.  The court rejected the defendant's argument that use of RICO would repeal the other two regulatory schemes.  *Id*. at 76-77.  The court noted that the government "has properly stated a RICO claim which it is specifically authorized to do . . . and is not attempting to use RICO to bring a suit under the FTC Act that it could not otherwise bring," distinguishing *Danielson*.  *Id*. at 78 n.5.

9

(1:10cv2208)

been unable to uncover relevant law emanating from the Sixth Circuit, save *Gifford, supra*.[5] The

Court is thus faced with the rather dubious task of analogizing factually distinct non-binding case

law in determining whether Empire, a non-borrower, may bring a RICO claim based on

misrepresentations that violate RESPA allegedly also constitute predicate acts of mail and wire

fraud.

　　　　The Court notes that Fifth Third cites case law in which the statutes at issue were found

not to have created a private right of action at all, instead providing exclusive administrative

remedies. *E.g. Ayres*, 234 F.3d at 517; *Brown*, 753 F.Supp.2d at 1251. As noted, RESPA is a

consumer protection statute that provides for a governmental right of action and a private right of

action for borrowers. 12 U.S.C. § 2601(a), (b); § 2607(d)(1)-(5).

　　　　Following the reasoning in *Ayres*, as Fifth Third asks, the question becomes whether

Congress intended to permit Fifth Third's actions to comprise an integral and inseparable

---

　　　[5] After briefing was submitted in this case, the Sixth Circuit decided *Brown v. Cassens Transport Co.*, 675 F.3d 946 (6th Cir. 2012). In *Brown*, the Court considered whether the plaintiffs could sue pursuant to RICO for mail and wire fraud based on allegedly fraudulent denials of State worker's compensation claims. *Id.* at 952-52. The Court, citing *Ayres* and *Bodimetric*, noted that other circuits have held RICO inapplicable to claims related to federal acts that had exclusive-remedy clauses in their enabling statutes. *Id.* at 955. However, the Court did not decide whether to adopt the reasoning in *Ayres* and *Bodimetric*, because the facts in *Brown* involved a state law and a federal law, whereas *Ayres* and *Bodimetric*, like the instant case, involve two federal laws. *Id.* The Court found that

> enabling statutes for federal agencies shed light on Congress's intent with regard to RICO because Congress passed both sets of statutes. In contrast, enabling statutes for state agencies, passed by state legislatures, say nothing about Congress's intent with regard to RICO. Michigan cannot limit the scope of a federal RICO cause of action.

*Id.* In the instant case, Congress passed both RICO and RESPA; thus Congress' intent in promulgating both RICO and RESPA is instructive.

10

(1:10cv2208)

element of mail fraud, such that RICO could be used to enforce the underlying statute.  *See*

*Brown*, 753 F.Supp.2d at 1261 (relying upon *McCulloch* and *Ayres*).  A court looks to whether

the statute creates a private right of action and whether the remedies are limited.  *See Id.*; *Ayres*,

234 F.3d at 522 n. 19 ("the lack of a private right of action for a violation of the Safety Act's

notification requirements is strong evidence that a violation of these requirements does not

constitute the predicate act of mail or wire fraud."); *McCulloch*, 298 F.3d at 1226; *Danielsen*,

941 F.2d at 1229; *Gifford*, 2010 WL 1875096, at *14.  Thus the *Ayres* court, in finding the Safety

Act violations did not constitute mail and wire fraud, was persuaded by the lack of a private right

of action and the limit on civil penalties within the Safety Act.

In the instant case, Congress, while providing for an administrative remedial scheme in

RESPA, also expressly provided a private right of action and permitted treble damages.  *See* 12

U.S.C. § 2607(d)(2),(5).  *Ayres*, therefore, diminishes Fifth Third's argument, rather than bolsters

it.  Following the logic presented in *Ayres*, violations of RESPA would be more likely to also

constitute mail and wire fraud predicate offenses.

A problematic fact in the instant case is that Empire is not among the class of persons for

whom the private right of action was created.  However, in accordance with the *Ayres* line of

cases, it is the existence of the private right of action and the available penalties in RESPA that

are determining factors in ascertaining whether Congress intended a violation of RESPA to

potentially constitute mail and wire fraud, the identity of the plaintiff notwithstanding.  Applying

*Ayres*, RESPA violations would be actionable pursuant to RICO.  Fifth Third does not point to

any section of the RICO statutory scheme that limits a class of plaintiffs.  The conclusion drawn,

11

(1:10cv2208)

therefore, is that while Empire cannot sue pursuant to RESPA, Empire may sue pursuant to RICO.

Congress has expressly admonished that RICO is to be liberally construed to effectuate its remedial purposes.  *Sedima*, 473 U.S. at 497-98.  The Court is also aware of the judicial hesitation in allowing plaintiffs to use RICO to pursue claims they would otherwise not be able to pursue.  *See e.g. Hemi Group, LLC v. City of New York, N.Y.*, 130 S.Ct. 983, 995 (2010) (Ginsberg, J., concurring) ("I resist reading RICO to allow the City to end-run its lack of authority to collect tobacco taxes . . . or to reshape the 'quite limited remedies' Congress has provided for violations of the Jenkins Act.").  In the absence of case law to the contrary and an advancement by Fifth Third of an alternative reasonable interpretation, the Court adopts the line of reasoning articulated in *Ayres* and the analogous cases.  In so doing, the Court finds that, because RESPA creates a private right of action and allows for expansive remedies in the form of treble damages, the allegations in the instant case, despite being based on RESPA violations, have been plausibly asserted as mail and wire fraud for the purposes of alleging a RICO claim.

**B. Association-in-Fact Enterprise**

An association-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct."  *United States v. Turkette*, 452 U.S. 576, 583 (1981).  To show an association-in-fact, a plaintiff must show "[an] ongoing organization, formal or informal, and . . . that the various associates function as a continuing unit."  *Id*.  More specifically, an association-in-fact enterprise must have a structure bearing three features: (1) "a purpose," (2) "relationships among those associated with the enterprise," and (3) "longevity

12

(1:10cv2208)

sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States,*

*556 U.S. 938, 946 (2009)*.

Empire alleges that,

Through the agreements between and among Fifth Third Financial, Fifth Third Mortgage, Fifth Third Mortgage's individual loan officers, and the settlement agents who agreed to take part in the Defendants' referral scheme and refer business to Vista, the Defendants and these co-operating settlement agents formed an association-in-fact with each other which also constitutes an "enterprise" engaged in illegal activities affecting interstate commerce pursuant to 18 U.S.C. §§ 1961(4) and 1962(a).

In order to insure that Vista received the fees for issuing the title insurance commitment, the title insurance policy and any Fifth Third-required title insurance endorsements in connection with all or substantially all of Fifth Third's mortgage loans, Fifth Third required any settlement agent or other settlement services company that was designated to perform the title examination, title insurance, escrow and settlement services for a Fifth Third loan to refer the issuance of the title insurance commitment, title insurance policy and any Fifth Third required title insurance endorsements - all title insurance premium-generating aspects of the transaction - to Vista. That is, Fifth Third conditioned its referral of settlement service business to settlement agents upon their agreement to refer all "title insurance" work to Vista.

The purpose of the enterprise created by the Defendants was to establish an entity through which Fifth Third Mortgage and Fifth Third Financial could conceal their referral scheme, and conceal and launder illegal referral payments and kickbacks to themselves and the Fifth Third Mortgage's individual loan officers to reward Fifth Third Mortgage, Fifth Third Financial, and Fifth Third Mortgage's individual loan officers, at the expense of the borrower, for having referred title and escrow business to closing agents willing to utilize Vista.

ECF No. 1 at ¶¶ 69, 24, 95.

Fifth Third argues that Empire merely alleges a business arrangement which does not

constitute a separate entity. ECF Nos. 13 at 34; 18 at 18. Fifth Third also asserts that Empire

does not identify the cooperating settlement agents, does not describe their relationships with

(1:10cv2208)

Fifth Third or specify which Fifth Third Defendant they allegedly associated with.  ECF Nos. 13 at 24; 18 at 18.  Fifth Third does not cite to relevant legal authority in support of its argument, and Empire does not specifically respond to these arguments.

As an initial matter, the Court notes that the Complaint sufficiently describes the relationships between the settlement agents and Fifth Third.  Furthermore, Fifth Third fails to explain how the allegations amount only to a business arrangement and not an association-in-fact enterprise, and it is not obvious to the Court, from the allegations in the Complaint, Fifth Third's cited case law, or independently reviewed case law how the pleadings are deficient in this way. Instead, the Complaint sufficiently ties together the various Fifth Third Defendants whom Empire plausibly alleges were coordinated to function as a unit.  *See Boyle*, 556 U.S. 945.

Fifth Third is correct to say that the Complaint does not identify the cooperating settlement agents or specify which Fifth Third Defendant they associate with; however, the particularity requirements of Rule 9(b) do not apply to the association-in-fact allegations, and at this time such designation is not required.[6]

Additionally, Fifth Third's assertion that the alleged enterprise's membership is "in flux" and therefore cannot function as a continuous unit is not persuasive.  Even if the membership were to fluctuate, such a trait is not incompatible with functioning as a continuous unit.  *See e.g.*

---

[6] The identity of the members is important in the context of complying with the rule of distinctness, which is not at issue in the instant case. *E.g. Dimov v. EMC Mortg. Corp.*, 2010 WL 2506717, at *6 (E.D.Tenn. June 17, 2010) (finding the omission of the identity of the members "critical" because if the unidentified individuals are employees or corporate agents of the defendant, no association-in-fact exists because it would violate the rule of distinctness in which a corporation cannot join with its own employees to create an association-in-fact).

(1:10cv2208)

*Firestone v. Galbreath*, 747 F.Supp. 1556, 1577 (S.D.Ohio 1990) (reversed in part on other

grounds, 25 F.3d 323 (6th Cir. 1994)) ("[w]hile the membership of the enterprise may change

over time, each member must continue to have the same purpose," citing *United States v.*

*Bledsoe*, 674 F.2d 647, 665 (8th Cir. 1982) ("[the requirement of a continuous unit] does not

mean the scope of the enterprise cannot change . . . nor does it mean that the participants in the

enterprise cannot vary . . . essential, however, is that there is some continuity of both structure

and personality.")); *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) ("that several

employees engaged in the activity at different times does not defeat the continuity requirement.").

Empire has thus sufficiently alleged an association-in-fact enterprise.

### C.  Proximate Cause

Fifth Third argues that Empire has offered no factual allegations that establish proximate

cause linking its injury and the alleged violative conduct.  ECF No. 13 at 18.  In support of its

argument, Fifth Third asserts that Empire cannot meet the principles articulated in *Holmes*, and

that Empire fails to allege that the specific RICO violations directly caused its injury.  ECF No.

13 at 18, 24.

### 1.  Applying the Principles in *Holmes*

In *Holmes*, the Supreme Court applied common law proximate cause principles to RICO

cases and, as a result, required a direct relation between the injury asserted and the injurious

conduct alleged.  *Holmes*, 503 U.S. at 268.  "Although not the sole element, the requirement of a

direct injury is a 'central element' of proximate cause."  *City of Cleveland v. Ameriquest Mort.*

*Securities*, 615 F.3d 496, 502 (6th Cir. 2010) (citing *Perry v. Am. Tobacco Co.*, 324 F.3d 845,

(1:10cv2208)

848 (6th Cir. 2003)).  In considering the premise behind the directness requirement, the Supreme

Court noted,

> First, the less direct an injury is, the more difficult it becomes to ascertain the
> amount of a plaintiff's damages attributable to the violation, as distinct from
> other, independent, factors.  Second, quite apart from problems of proving factual
> causation, recognizing claims of the indirectly injured would force courts to adopt
> complicated rules apportioning damages among plaintiffs removed at different
> levels of injury from the violative acts, to obviate the risk of multiple recoveries.
> And, finally, the need to grapple with these problems is simply unjustified by the
> general interest in deterring injurious conduct, since directly injured victims can
> generally be counted on to vindicate the law as private attorneys general, without
> any of the problems attendant upon suits by plaintiffs injured more remotely.
> (internal citations omitted)

*Holmes*, 503 U.S. at 269-70.  These principles are relevant to determining whether a plaintiff has

sufficiently pleaded proximate cause, but they are not requirements.  *City of Cleveland*, 615 F.3d

at 503 (citing *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 459 (2006)).

### a.  The Amount of Damages Attributable to the Injury

The bulk of the parties' briefing is devoted to the issue of whether Empire's damages are

too speculative, and whether the injury was directly caused by the alleged RICO violations.  Fifth

Third contends that Empire's injury and attendant damages are indirect and too speculative,

contingent and remote—that Empire merely had an expectancy interest in servicing future

transactions and, without a definite pre-existing contractual right to the referrals, Empire's

expectancy interest is not sufficiently concrete to support a RICO claim.  ECF Nos. 13 at 19-20;

18 at 7.  Empire argues that its injury is direct, its damages not speculative and, pursuant to case

law, compensable under RICO.  ECF No. 17 at 24.  The parties in large part rely on the same

legal authority to support their arguments but disagree about the resultant conclusions.

16

(1:10cv2208)

### i. Whether Empire Sufficiently Alleges Injury

Fifth Third argues that Empire had no contractual right to receive referrals, rendering its injury too speculative.  ECF No. 18 at 7.  Empire retorts that it sufficiently alleged lost opportunity for business and lost past profits, and that such injury is not speculative and the damages are compensable under RICO.  ECF No. 17 at 24.

Empire relies in large part upon *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008).  *Bridge* involved a public auction run by the county through which the county sold tax liens it acquired on the property of delinquent taxpayers.  *Id.* at 642.  The bids were based on percentage penalties.  *Id.*  Most parcels were so profitable that the bidders bid a 0% penalty.  *Id.*  Because the bidding often resulted in numerous 0% bids, the county devised a method for accepting the bids: the "Single, Simultaneous Bidder Rule."  *Id.*  Pursuant to this method, each bidder, after presenting an affidavit to the county affirming its independence, submitted a bid in its own name— bidding by agents, employees, or related entities was prohibited— and the winning bidders were then allocated on a rotating basis.  *Id.* at 643-44.

The *Bridge* parties were participants in the county auctions.  *Id.* at 643.  The plaintiffs sued, alleging that the defendants colluded in fraudulently obtaining county permission to bid as single entities, when in fact they were related firms.  *Id.* at 644.   Thus, the defendants obtained more properties because they were in reality one firm with multiple "arms" bidding against the plaintiffs, in violation of the rule.  *Id.*

The issue before the *Bridge* Court was whether first party reliance is an element of a RICO claim.  *Id.* at 646.  The Court also explained, however, that the Seventh Circuit reversed

17

(1:10cv2208)

the dismissal of the RICO claim because it found that the plaintiffs sufficiently alleged proximate cause under *Holmes*, and that the plaintiffs suffered a "'real injury' when they lost the valuable chance to acquire more liens, because 'that injury can be redressed by damages.'" *Id.* at 645. The Court noted that the plaintiffs' complaint did not elaborate on the county rotational system, but that

> [w]hile a precise understanding of the county's system may be necessary to calculate [plaintiffs'] damages, nothing in our disposition turns on this issue.  For present purposes, it suffices that [plaintiffs] allege they "suffered the loss of property related to the liens they would have been able to acquire, and the profits flowing therefrom, had [defendants] not implemented their scheme and acquired liens in excess of their appropriate share."

*Id.*

On remand, the district court granted the defendants' motion for summary judgment because it found that the plaintiffs did not sufficiently show injury and proximate cause.  *Phoenix Bond & Indem. Co. v. Bridge*, 2010 WL 3526469, at * 6 (N.D.Ill. September 01, 2010).  The court noted that the Seventh Circuit had previously relied on plaintiffs' description of the county lien allocations into which the plaintiffs had "injected a level of mathematical precision." *Id.* at *7.  The district court found that the system was not nearly so precise, and that the plaintiffs could not identify the specific liens they would have been awarded, "thus complicating the causal link between [d]efendants' alleged violations and [p]laintiffs' injuries." *Id.*  Accordingly, the court found that the allocation system was subjective, and the injuries were therefore too uncertain and speculative. *Id.*

Post remand, the Seventh Circuit reversed.  The court stated that "[o]nce a plaintiff presents evidence that he suffered the sort of injury that would be the expected consequence of

18

(1:10cv2208)

the defendant's wrongful conduct, he has done enough to withstand summary judgment on the ground of absence of causation." *BCS Services, Inc. v. Heartwood 88, LLC*, 637 F.3d 750, 758 (7th Cir. 2011). The court asserted that the "defendants stole a business opportunity from the plaintiffs by flooding the auction room with raised hands that shouldn't have been there," thus injuring the plaintiffs. *Id.* at 756-57.

  In the instant case, Empire alleges that Fifth Third stole a business opportunity by refusing to use Empire for settlement work and flooding the referral system with settlement agents that participated in the referral scheme. For present purposes, at the motion to dismiss stage, these allegations will suffice. *See Id.  See also Elsevier Inc., v. W.H.P.R., Inc.*, 692 F.Supp.2d 297, 312 (S.D.N.Y. 2010) (publisher of journals sued to recover profits it allegedly would have earned had the defendants not engaged in subscription fraud; publisher "will have to contend with the limitation of speculativeness," but at the pleading stage "it suffices that [p]laintiffs have alleged damages potentially recoverable under the RICO statute."); *In re American Honda Motor Co., Inc. Dealerships Relations Litigation*, 941 F.Supp. 528, 542 (D.Md. 1996) (denying motion to dismiss, noting that despite the car dealer plaintiffs having an uncertain entitlement to cars and a "daunting issue of proof" that the cars were misallocated, the case did not merit dismissal of claims at so early a stage); *cf. Strates Shows, Inc. v. Amusements of America, Inc.*, 379 F.Supp.2d 817, 827 (E.D.N.C. 2005) (dismissing a claim when the plaintiff participated in State bidding processes and alleged that it lost contracts due to corruption, finding that the claim "rests wholly on the allegation that it should have been awarded a contract, in a process that involved submission of competitive proposals to a discretionary administrator.").

19

(1:10cv2208)

Empire has alleged injury and damages potentially recoverable pursuant to RICO, and though it will have to contend with the speculativeness in its entitlement to receive referrals, at the pleading stage these allegations survive a motion to dismiss.

### ii.  Whether Empire's Injury is Direct

"When a court evaluates a RICO claim for proximate causation the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza*, 547 U.S. at 461.  In *Anza*, a plaintiff brought a RICO claim against a competitor, alleging that the competitor did not collect New York sales tax from customers and sent resultant fraudulent tax forms to the State in order to conceal its fraudulent activity.  *Id*. at 454.  The plaintiff argued that the failure to collect sales tax enabled the competitor to charge lower prices to its customers, in turn injuring the plaintiff's business.  *Id*. at 454-455.

The *Anza* Court first noted that the direct victim was the State of New York.  *Id*. at 458. The Court then found that the plaintiff's injury was too remote, noting that the cause of the plaintiff's harm was "a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State)."  *Id*.  The Court explained,

> The injury Ideal alleges is its own loss of sales resulting from National's decreased prices for cash-paying customers.  National, however, could have lowered its prices for any number of reasons unconnected to the asserted pattern of fraud.  It may have received a cash inflow from some other source or concluded that the additional sales would justify a smaller profit margin.  Its lowering of prices in no sense required it to defraud the state tax authority . . . . Ideal's lost sales could have resulted from factors other than petitioners' alleged acts of fraud. Businesses lose and gain customers for many reasons, and it would require a complex assessment to establish what portion of Ideal's lost sales were the product of National's decreased prices.

*Id*. at 858-59.  *See also City of Cleveland*, 615 F.3d at 504 ("lack of directness exposes 'the

20

(1:10cv2208)

difficulty that can arise when a court attempts to ascertain the damages caused by some remote action,'" quoting *Anza*); *James Cape & Sons Co. v. PPC Const. Co.*, 453 F.3d 396, 403 (7th Cir. 2006) (in a case involving bid-rigging, a "court could never be certain whether [plaintiff] would have won any of the contracts that were the subject of the conspiracy 'for any number of reasons unconnected to the asserted pattern of fraud,'" citing *Anza*).

Viewed in the light most favorable to Empire, the Complaint shows the alleged injury was directly caused by the asserted pattern of fraud.   Empire alleges that Fifth Third contacted Empire and told Empire that if it did not refer title insurance business to Vista, Fifth Third would stop referring settlement business to Empire and would instead refer settlement business to another settlement agent.  ECF No. 1 at 15, ¶52.  Therefore, there are no reasons unconnected to the asserted pattern of fraud that caused Fifth Third to stop referring business to Empire.  *Cf. Anza*, 547 U.S. at 459.  This is not a case wherein the plaintiff sits parallel to the action, as in *Anza*; or attempts to recover in a linear fashion through and contingent upon the victims, as in *Holmes*.[7]  Instead, Empire alleges that it was directly harmed by Fifth Thirds' misconduct, and these allegations sufficiently allege direct injury.

### iii.  Whether the Causal Chain is Broken

Fifth Third argues that the borrowers break the causal chain of Empire's asserted injury.

---

[7]  In *Holmes*, the plaintiff was a securities investment protection company forced to pay out to customers who lost investments because the defendant's stock manipulation scheme prevented the brokers from paying the customers.  503 U.S. at 261-63.  The plaintiff claimed that it was subrogated to the rights of the customers of the brokers, which the Court rejected, finding the injury too contingent upon the harm to the broker-dealers, stating that "[t]he broker-dealers simply cannot pay their bills, and only that intervening insolvency connects the conspirators' acts to the losses suffered by the nonpurchasing customers and general creditors."  *Id.* at 271.

(1:10cv2208)

ECF No. 18 at 9. Empire in turn asserts that the industry standard is for the mortgage lenders to provide referrals to the settlement agents, rendering the borrowers without discretion to chose the agents and leaving the causal chain unbroken. ECF No. 17 at 28.

Courts have recognized that when independent actors are present in the causal chain, the injury is too speculative to support recovery. For example, in *Association of Washington Public Hospital Districts v. Philip Morris, Inc., 241 F.3d 696 (9th Cir. 2001)*, several hospitals claimed that the defendant tobacco companies concealed nicotine's harmfulness from the public, which led to more smoking, which led to un-reimbursed expenses for treating tobacco-related illnesses. The court concluded that the hospitals' damages "were entirely speculative in nature" because their claims "would involve proof, ultimately, of how smokers themselves would have changed their behavior in the absence of the defendants' wrongdoing." *Id.* at 702 (citing *Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris Inc., 185 F.3d 957 (9th Cir. 1999)*; *see also Strates Shows, 379 F.Supp.2d at 828* (plaintiff participated in State bidding processes and alleged that it lost contracts due to corruption; the court found that intervening factors such as the presence of other bidders, lack of criteria for selecting bids and administrative discretion provided by state law prevented a proximate cause finding); *Anza, 547 U.S. at 458*; *James Cape & Sons, 453 F.3d at 403*.

In the instant case, Empire alleges that the borrowers relied on deceptive documents they received from Fifth Third. ECF No. 1 at 23 ¶80. These documents included the referral for settlement services. ECF No. 1 at 9, ¶23. Empire alleges, plausibly, that the settlement agent is almost always selected by the lender or mortgage broker that originated the mortgage loan. ECF

(1:10cv2208)

Nos. 1 at 9, ¶20;17 at 28.  Therefore, Empire alleges the borrower lacks the discretion necessary to break the causal chain.

Fifth Third argues that if, as Empire alleges, the borrower lacks the discretion to choose a settlement agent, then the borrower could not have relied on the documents as needed to assert a RICO claim predicated on mail or wire fraud.  ECF No. 18 at 9.  However, Empire asserts that the borrowers relied upon the documents to be legal and legitimate, and that had the borrowers suspected that Vista was allegedly being used to facilitate the payment of illegal referral fees and kickbacks at their expense, they would have refused to conduct business with Vista.  ECF No. 17 at 22.  Such reliance has been upheld in RICO cases.  *See Chisolm v. TranSouth Financial Corp.,* 95 F.3d 331, 339 (4th Cir. 1996) (reliance is properly alleged when based upon apparent legitimacy and legality of the documents, "thus influencing [a person] to accept the process without question."); *Robinson v. Fountainhead Title Group Corp.,* 252 F.R.D. 275, 282 (D.Md. 2008) (citing *Chisolm*); *see also Bridge,* 553 U.S. at 658-59 (county's reliance upon the truthfulness of affidavits did not break the causal chain; but "if the county knew that the [defendants'] attestations were false but nonetheless permitted them to participate in the auction, then arguably the county's actions would constitute an intervening cause breaking the chain of causation between petitioners' misrepresentations and respondents' injury.").  Accordingly, the Court finds that Empire has sufficiently alleged reliance on the part of the borrowers, and neither the borrowers nor the reliance breaks the causal chain.

### b.  The Difficulty of Apportioning Damages

Fifth Third argues that Empire does not posit any method for determining which loans it

23

(1:10cv2208)

would have performed settlement services for had Fifth Third not referred the work to Vista, nor does Empire offer a method for apportioning the damages among the putative class, rendering that task impossible.  ECF No. 13 at 12-13.  Empire argues that the damages are easily calculable, and because there has not been class discovery and no class certification motion is pending, the question of apportionment should not be entertained at this motion to dismiss stage. ECF No. 17 at 30.

As an initial matter, the Court notes that as the difficulty of apportioning damages is one of the premises of proximate cause articulated in *Holmes*, it is properly considered at the motion to dismiss stage.  *See Anza*, 547 U.S. at 458-460.  Moreover, the Court is not convinced that the apportionment of damages are as "easily calculable" and "straightforward" as Empire argues. ECF No. 17 at 30.  Nevertheless, the Court finds that the facts of the instant case do not present insurmountable difficulties in apportioning damages.  As Empire has alleged that Fifth Third rather than the borrowers chose the settlement agents, there is no need to question every borrower to determine whether each would have chosen a different settlement agent, as Fifth Third argues. ECF No. 13 at 22.  Nor is it necessary to re-create entire proposal and bidding processes and sit in the place of a discretionary administrator in order to conduct an "after-the-fact, hypothetical, determination."  *Strates Shows*, 379 F.Supp.2d at 830.  From the facts alleged, the inquiry, at this stage, appears to be contained within a modest sphere of Fifth Third associates.  Whether, after discovery, the sphere of inquiry will remain so contained, and whether Empire can definitively

(1:10cv2208)

advance a conforming method within that sphere, remains to be seen.[8]  For the present time,

Empire has alleged facts that do not, at this stage, indicate that apportionment cannot be

achieved.  *See American Honda Motor Co., 941 F.Supp. at 544* (denying motion to dismiss

because the plaintiffs, multiple car dealerships, "satisfied the proximate cause requirement,

difficulties of quantification and allocation notwithstanding.").

### c.  The Deterrence of Injurious Conduct

The general interest in deterring injurious conduct is served when directly injured victims

can be counted on to vindicate their rights.  *Holmes, 503 U.S. at 269*.  Thus, the *Holmes*

proximate cause principles caution against a "risk of duplicative recoveries by plaintiffs removed

at different levels of injury from the violation." *Bridge, 553 U.S. at 658*.  Fifth Third argues that,

if there were RESPA violations, the direct victims in the instant case were the borrowers, who

can and have sued to recover damages pursuant to RESPA.  ECF No. 18 at 10.  Therefore, Fifth

Third argues, Empire cannot recover pursuant to RICO, because the result would be overlapping

recoveries.  ECF No. 18 at 11.  Empire retorts that Fifth Third's conduct resulted in damages to

multiple victims; these damages are not overlapping; and there is no legal authority to reach the

conclusion the Court cannot allow two victims to recover.  ECF No. 17 at 32.

The reluctance to award damages to multiple victims is inherent in the proximate cause

inquiry so as to weed out remote and indirect plaintiffs.  *Holmes, 503 U.S. at 269*.  As noted,

however, Empire has sufficiently alleged that its injury was directly caused by Fifth Third's

---

[8]  For example, Empire alleges a Fifth Third loan officer told Empire that Fifth Third
Mortgage would refer Empire's settlements to Freedom Title.  ECF No. 1 at 15, ¶52.  It seems
possible, therefore, that this can assist in some method of determination.

25

(1:10cv2208)

conduct. Despite such a finding, the Court cannot reason that dismissal is required because there are allegedly two directly injured victims, and the Court is not aware of legal authority that would dictate it should do so. *See e.g. Mid Atlantic Telecom, Inc. v. Long Distance Servs., Inc.*, 18 F.3d 260, 263-64 (4th Cir. 1994)[9] (allowing telephone service provider to recover from competitor because its injury was direct despite the existence of customers who were also directly injured); *Robinson v. Fountainhead Title Group Corp.*,2009 WL 539882, at *1 (D. Md. March 3, 2009) (allowing a consumer to bring claims against defendant pursuant to both RESPA and RICO).

The Court finds that Empire has sufficiently alleged direct injury, despite the potential recovery of two alleged victims of the alleged scheme. This finding is consistent with the principles articulated in *Holmes*.

### 2. Whether the RICO Violations Directly Caused the Injury

Fifth Third argues that the alleged RICO violations subsumed in Empire's individual counts did not cause Empire to lose business. ECF No. 13 at 24. The Court considers Empire's separate counts in turn.

### a. Counts I and II: 18 U.S.C. § 1962(a)

Counts I and II of Empire's Complaint allege that Fifth Third violated 18 U.S.C. §

---

[9] *In Mid Atlantic*, a telephone service company sued a competitor alleging the competitor used a fraudulent billing scheme. 18 F.3d at 261. The competitor's scheme built in hidden charges to existing customers, which in turn allowed the competitor to lower its published rates and attract new customers. *Id*. Mid Atlantic sued, alleging the competitor used the scheme to lure away Mid Atlantic's customers. *Id*. The court rejected the competitor's argument that *Holmes* necessitated a finding that the consumers were the only victims, thus only they can assert their rights. *Id*. at 263. The court found that, unlike the plaintiffs in *Holmes*, Mid Atlantic's injuries were not derivative of any losses suffered by its former customers, but instead were "distinct and independent." *Id*. at 264.

(1:10cv2208)

1962(a).  ECF No. 1 at 27, ¶97; at 33 ¶121.  § 1962(a) reads, in pertinent part,

> [i]t shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

Pleading an injury proximately caused by a § 1962(a) violation requires a plaintiff to identify "a separate and traceable injury" from any harm occasioned by the predicate acts.  *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 494 (6th Cir. 1990).  That injury must "stem[] directly from the defendants' alleged use or investment of their illegally obtained income."  *Id.*  Merely alleging that the racketeering proceeds were reinvested back into the same RICO enterprise is insufficient to meet the injury requirement.  *See Vemco, Inc. v. Camardella,* 23 F.3d 129, 133 (6th Cir. 1994); *Falise v. American Tabacco Co.* 94 F.Supp.2d 316, 349 (E.D.N.Y. 2000); *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1188 (3d Cir. 1993); *Fogie v. THORN Americas, Inc.*, 190 F.3d 889, 896 (8th Cir. 1999).

Empire attests that it does not allege mere reinvestment of the alleged racketeering proceeds back into the same RICO enterprise, but instead alleges that the proceeds were reinvested specifically into the Vista entity.  ECF No. 17 at 32.  Empire contends that Vista is one of Empire's competitors, and the investment of the money into Vista, "allowing Vista to grow[] and giving it resources to compete in the marketplace," caused Empire to lose business. ECF No. 17 at 32-33.  Empire asserts it has, therefore, properly pleaded that its injuries stem directly from the use or investment of the income under § 1962(a).  ECF No. 17 at 33.

27

(1:10cv2208)

The Court is unpersuaded.  Even if such an allegation of competitor harm would satisfy § 1962(a), Empire does not allege facts in its Complaint that support this theory.  Empire's Complaint states that "Fifth Third Financial Corporation created an "Affiliated Business Arrangement" ("ABA") – Vista – *solely* to facilitate the collection of unlawful referral fees and kickbacks in violation of [RESPA]."  ECF No. 1 at 2, ¶3 (emphasis added).  Nowhere in the Complaint does Empire assert that Vista was competing on the open market outside the alleged scheme.  Rather, Empire specifically asserts that Vista was created and used only to facilitate Fifth Third's allegedly unlawful scheme, and that Empire was harmed by Fifth Third's scheme. ECF No. 1 at 2, ¶3; at 7, ¶14; at 9, ¶21.  Therefore, Empire has not alleged that it suffered a separate and traceable injury from any harm occasioned by the predicate acts.  *See Craighead, 899 F.2d at 494*.  Accordingly, Counts I and II must be dismissed.

**b.  Counts III and IV:  18 U.S.C. § 1962(c)**

Counts III and IV of Empire's Complaint allege that Fifth Third violated 18 U.S.C. § 1962(c).  ECF No. 1 at 34, ¶128; at 36, ¶134.  18 U.S.C. § 1964(c) allows for private suits for treble damages and attorneys' fees to "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter . . . ."  § 1962(c) reads,

> [i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

"[T]he compensable injury necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern . . . . Any recoverable damages occurring by reason of a violation of §

28

(1:10cv2208)

1962(c) will flow from the commission of the predicate acts." *Sedima*, 473 U.S. at 497 (footnote

omitted) (rejecting a narrower reading that would have limited recovery to plaintiffs who pleaded

an injury where a only racketeering injury had occurred); *see also Trollinger*, 370 F.3d at 612.

 Empire alleges that Fifth Third engaged in the predicate acts of mail and wire fraud, in

addition to interstate transport of money converted or fraudulently obtained.  ECF No. 1 at 34.

### i.  Mail and Wire Fraud

 Empire alleges the mail and wire fraud occurred when Fifth Third issued allegedly false

and deceptive HUD-1 Settlement Statements and other settlement documents in addition to faxed

and emailed loan documents.  ECF No. 1 at 28, ¶104.  Fifth Third argues that Empire fails to

allege that the racketeering acts of mail and wire fraud themselves directly caused Empire to lose

any business.  ECF No. 18 at 14.  Instead, Fifth Third asserts, "Empire alleges that its injury

flowed from 1) its refusal to refer the title insurance portion of settlement work to Vista, and 2)

the Fifth Third Defendants' decision to 'blacklist' Empire in return."  ECF No. 13 at 26.

 Empire has sufficiently pleaded that Fifth Third's allegedly fraudulent scheme was

directly related to and was the proximate cause of their injuries as required by 18 U.S.C. §

1964(c) under *Holmes*, 503 U.S. at 268, and *Anza*, 547 U.S. at 456-61.  *See Brown v. Cassens

Transport Co.*, 546 F.3d 347, 357 (6th Cir. 2008) (noting that *Bridge* reaffirmed the Supreme

Court's position in *Holmes* requiring a plaintiff establish proximate cause "'by reason of' a RICO

violation.").  Empire has alleged that the HUD-1 Settlement Statements, disclosures, and other

documents and communications, which allegedly contained fraudulent and false statements, were

intended to and did assure the borrowers that their mortgage transactions were proceeding

(1:10cv2208)

legitimately and legally, and influenced the customers to accept the process.  ECF No. 1 at 24,

¶85.  Empire alleges that Fifth Third's use of the mails and wires was in furtherance of and for

the purpose of executing the scheme and artifice to defraud, and the scheme injured Empire.

ECF No. 1 at 20, ¶71.

Fifth Third's argument that Empire must allege "that the predicate acts themselves

directly caused Empire to lose business" is unpersuasive.  ECF Nos. 13 at 26; 18 at 14.  Fifth

Third cites no legal authority for its argument, and the Court is not aware of a requirement that a

plaintiff must plead that the predicate acts themselves caused the injury, beyond the

aforementioned principles and requirements articulated in *Holmes*, *Anza*, *Bridge* and other cited

case law.[10]  To do so would appear to require a first-party reliance element rejected by *Bridge*,

and though Fifth Third insists it is not making a first-party reliance argument, it does not

adequately explain what argument it is making such that the Court can consider it.  Fifth Third

only, by way of further explanation, re-asserts arguments previously advanced and which the

Court considered, *supra*.  *See* ECF No. 18 at 14.  Therefore, the Court finds that Empire has

---

[10]  For example, the plaintiffs in *Bridge* alleged that the predicate acts of mail and wire fraud occurred when the defendants, in furtherance of the scheme, sent notices to property owners.  553 U.S. at 644-45.  The *Bridge* plaintiffs did not allege these notices themselves directly caused plaintiffs to lose business, but that the scheme caused them to lose business, and the predicate acts were done in furtherance of the scheme.  *Id*.  The Court stated that "[t]he gravamen of the offense is the scheme to defraud, and any 'mailing that is incident to an essential part of the scheme satisfies the mailing element," quoting *Schmuck v. United States*, 489 U.S. 705, 712 (1989)).  *See also BCS Services, Inc*., 637 F.3d at 753; *Robinson*, 2009 WL 539882, at *2 (modifying its previous order dismissing the plaintiff's RICO claim after *Bridge* was decided, noting that it had previously rejected the claim because the plaintiff was not directly injured by the allegedly fraudulent mailings, but that after *Bridge*, it is "clear that a RICO claim predicated on mail fraud is based on the fraudulent scheme rather than on a particular fraudulent mailing.").

(1:10cv2208)

sufficiently pleaded that Fifth Third's allegedly fraudulent scheme was directly related to and

was the proximate cause of its injuries as pleaded in Counts III and IV.

### ii.  Interstate Transport of Money

Fifth Third argues that Empire also fails to allege any direct relation between its transport

-of-stolen-money predicate and its lost referrals.  ECF Nos. 13 at 26; 18 at 15.  Empire responds,

in a footnote, by claiming that Fifth Third ignored Empire's "detailed allegations of how [Fifth

Third] made fraudulent misrepresentations toward their consumers, how those representations

led to business for Vista, and how Vista's business is interstate."  ECF No. 17 at 34.

Empire fails to allege any direct relation between its transport-of-stolen-money predicate

and lost referrals.  Despite Empire's insistence that the Complaint includes "detailed allegations,"

the Court, having reviewed the paragraphs specifically referenced by Empire, does not find them

to be sufficiently detailed.  ECF No. 17 at 35 (citing ECF No. 1 at ¶¶68, 69, 71-72, 80, 82-86, 94,

104, 114, 118-119, 127, 133).  Instead, Empire merely asserts that Vista was engaged in

interstate commerce and references the transfer of money in conjunction with its allegations of

the use or investment of money pursuant to § 1962(a).  *E.g.* ECF No. 1 at 19-20, ¶68,.  These

allegations do not support the legal conclusions Empire asserts nor do they explain a direct

relation between the alleged acts and its injury, and therefore the allegations of interstate

transport of money, as alleged, in Counts III and IV must be dismissed.  *See Twombly*, 550 U.S.

at 570.

### c.  Counts V and VI:  18 U.S.C. § 1962(d)

Counts V and VI of Empire's Complaint allege that Fifth Third violated 18 U.S.C. §

31

(1:10cv2208)

1962(d).  ECF No. 1 at 37, ¶139; at 38, ¶146.  § 1962(d) reads, "[i]t shall be unlawful for any

person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

Empire alleges Fifth Third "conspired within the meaning of 18 U.S.C. § 1962(d) to violate §

1962(a)," in that Fifth Third "conspired to use or invest income derived from a pattern of

unlawful activity under 18 U.S.C. § 1961(1) to operate, maintain control of, and maintain an

interest in the enterprise."  ECF No. 1 at 37, ¶140; at 38, ¶147.

     Because Empire fails to state a claim with regard to § 1962(a), it cannot state a claim of

conspiracy to violate that section under § 1962(d).  *See Elkins v. Chapman*, 36 Fed.App'x. 543,

544 (6th Cir. 2006); *Craighead*, 899 F.2d at 495; *Grider v. Texas Oil & Gas Corp.*, 868 F.2d

1147, 1151 (10th Cir. 1989).  Accordingly, dismissal of the § 1962(d) claim is warranted.

### D.  Particularity Requirement

     Fifth Third argues that Empire's RICO claims fail because the Complaint does not

adequately allege racketeering activity as required by Fed. R. Civ. Pro. 9(b).  Pursuant to Rule

9(b), "a party must state with particularity the circumstances constituting fraud or mistake."  *Id.*

This requirement applies to RICO claims predicated on mail and wire fraud.  *Advocacy Org. for

Patients and Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999).  In order to

allege fraud with particularity, a plaintiff, at a minimum, must "allege the time, place, and

content of the alleged misrepresentation . . . ; the fraudulent scheme; the fraudulent intent of the

defendants; and the injury resulting from the fraud."  *Advocacy Org.*, 176 F.3d at 322 (quoting

*Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993) (internal quotation marks and citation

omitted)).

32

(1:10cv2208)

"Mail and wire fraud are proven by showing a scheme or artifice to defraud combined with either a mailing or an electronic communication for the purpose of executing the scheme." *Bird v. Delacruz*, 2005 WL 1625303, at *5 (S.D.Ohio, July 6, 2005) (citing *VanDenBroeck v. CommonPoint Mortgage Co.*, 210 F.3d 696, 701 (6th Cir. 2000) (overruled on other grounds by *Bridge*, 553 U.S. at 161)). "A scheme to defraud includes any plan or course of action by which someone uses false, deceptive, or fraudulent pretenses, representations, or promises to deprive someone else of money." *United States v. Jamieson*, 427 F.3d 394, 402 (6th Cir. 2005). When pleading predicate acts of mail or wire fraud, in order to satisfy the heightened pleading requirements of Rule 9(b), a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 405 (6th Cir. 2012) (quoting *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008) (quoting *Gupta v. Terra Nitrogen Corp.*, 10 F.Supp.2d 879, 883 (N.D.Ohio 1998))).

Fifth Third argues that the Complaint does not cite relevant dates or times the documents were sent; does not state that the documents were even mailed or wired; does not indicate which of the Defendants made the alleged misrepresentations; and contains only vague allegations of concealment and misrepresentations. ECF No. 13 at 29-32. As to the latter, Fifth Third specifically asserts it had no duty to disclose the allegedly concealed information; the Complaint fails to cite actual fraud in the documents; and the Complaint fails to state how the HUD-1 form was misleading, thus leaving Fifth Third to speculate as to what the form should have said or

33

(1:10cv2208)

how the charges should have been reflected.  ECF No. 13 at 29-32.

The Court finds that the Complaint sufficiently states how the HUD-1 form was

misleading.  Empire alleges that the charges depicted on the HUD-1 form that purported to be for

Vista's settlement services were false because Vista did not perform the settlement services.

ECF No. 1 at 21, ¶72.  The Complaint also sufficiently alleges the HUD-1 form concealed that

Fifth Third would be paid an additional fee, the kick-back or referral fee.  ECF No. 1 at 22, ¶79.

Even if these allegations would not rise to the level of "actual fraud," actual fraud in the

documents is not required in a RICO claim alleging mail and wire fraud.  *See Williams v. Duke*

*Energy Intern., Inc.*, 681 F.3d 788, 802 (6th Cir. 2012)(bills sent to customers were "true"; the

plaintiffs properly asserted the true statements were used to conceal the fraud, which amounted to

an alleged rebate for favored customers); *Dana Corp. v. Blue Cross & Blue Shield Mut. of*

*Northern Ohio*, 900 F.2d 882, 886 (6th Cir. 1990) (finding the complaint survived a Rule 9(b)

challenge when the information about costs contained in the mailings were alleged to be untrue,

relying upon *Schmuck*, 489 U.S. at 715 ("innocent mailings— ones that contain no false

information themselves— can still be sufficient to be part of a mail fraud.")).  Furthermore, the

alleged absence of a duty to disclose on the part of Fifth Third does not defeat the sufficiency of

Empire's allegations.  *See Williams*, 681 F.3d at 803 (rejecting a duty to disclose argument,

noting that the plaintiff alleged the non-disclosure of a side-agreement constituted the fraud).

As Fifth Third contends, however, the Complaint repeatedly refers to "Defendants"

collectively, without attribution to a particular corporate defendant.  The Sixth Circuit has stated

that "where there are multiple defendants . . . a claim must identify who made the alleged

34

(1:10cv2208)

misrepresentations. *Hoover v. Langston Equipment Assoc., Inc., 958 F.2d 742, 743, 745 (6th Cir. 1992)*. While the identity of the defendants is relevant to the sufficiency of the complaint, it is not, standing alone, necessary— especially when the Defendants, as in this case, are related corporate entities and can sort out themselves who made the alleged misstatements. *See U.S. ex rel. Bledsoe v. Community Health Systems, Inc., 501 F.3d 493, 506-508 (6th Cir. 2007)* (holding that failure to identify specific individual employees within the defendant corporation is relevant but not mandatory). The Court is also aware that,

> [i]t is a principle of basic fairness that a plaintiff should have an opportunity to flesh out her claim through evidence unturned in discovery. Rule 9(b) does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim.

*Williams*, 681 F.3d at 803 (citing *Michaels Bldg. Co. v. Ameritrust Co., N.A., 848 F.2d 674, 680 (6th Cir.1988)*).

However, in the only instance of specific details purportedly constituting mail or wire fraud, the Powers transaction, the Complaint also fails to allege that the HUD-1 form was mailed or transmitted by wire to the Powers. The Complaint adequately states the date that the Powers received the allegedly fraudulent documents, including the HUD-1 form, on March 24, 2009. ECF No. 1 at 21, at ¶74. But Empire does not allege that the documents were sent to the Powers; rather, it implies that the documents were handed to Powers at their home, at the time of the closing.[11]  ECF No. 1 at 21-22, ¶75. Instead, to satisfy the mailing requirement, Empire appears

---

[11]  The Complaint recites that the HUD-1 form was "delivered" to the Powers; Empire, in its opposition brief, asserts that the "Defendants gave their customers" HUD-1 forms.  ECF No. 17 at 22.

(1:10cv2208)

to allege that there are other documents that Fifth Third sent through the mails and wires that caused the HUD-1 forms to be presented to the borrowers.  But Empire has not identified these other documents nor the time, place, content, and parties to those supposed communications.  *See Beard v. Worldwide Mortg. Corp.*, 354 F.Supp.2d 789, 802 (W.D.Tenn. 2005)("Loose references to mailings and telephone calls in furtherance of a purported scheme to defraud will not do."(quoting *Jepson Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994))).  In short, the Complaint piggybacks unidentified mailed and wired documents onto the one identified but un-mailed or transmitted by wire HUD-1 form, in an effort to satisfy the pleading with particularity requirement inherent in mail and wire fraud.  Empire does not cite legal authority upon which such a theory may comfortably rest.  The heightened pleading requirements of Rule 9(b) are, therefore, not satisfied, and the complaint must be dismissed.

(1:10cv2208)

## IV.  Conclusion

For the reasons set forth above, the Court grants the motion to dismiss (ECF No. 13) filed

by the Fifth Third Defendants.  Plaintiff successfully maneuvered many of the challenges pleaded

by Defendants but, ultimately, the Complaint fails, as described herein.


IT IS SO ORDERED.


 March 29, 2013                                    /s/ Benita Y. Pearson
Date                                             Benita Y. Pearson
                                                 United States District Judge

37